## THOMPSON v. STATE OF LOUISIANA et al.*

### Nos. 11101, 11120.

Circuit Court of Appeals, Eighth Circuit.
July 18, 1938.

James M. Chaney, of St. Louis, Mo., for appellant.

Charles J. Rivet, Sp. Asst. to Atty. Gen. of State of Louisiana (Gaston L. Porterie, Atty. Gen., and D. M. Ellison, Sp. Asst. to Atty. Gen., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

The question presented by this appeal is whether appellant, trustee for the Missouri Pacific Railroad Company, debtor, a Missouri corporation, in reorganization proceedings under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, is liable for the corporate franchise or annual excise tax imposed by the laws of Louisiana upon foreign corporations doing business in that state, Act La. No. 10 of 1935, 1st Ex.Sess. The trustee having refused to pay the tax for the year 1935, the State and its Secretary of State, who was charged with the duty of collecting such taxes, brought this suit under the Declaratory Judgment Act, Jud.Code § 274d, 28 U.S.C.A. § 400, seeking to have it adjudged that the trustee is subject to the payment of such taxes.

The lower court made findings of fact and conclusions of law in favor of petitioners, and entered decree as prayed. From the decree so entered the trustee prosecutes

*Rehearing denied Aug. 25, 1938.

this appeal. He seeks reversal on the grounds that he is not liable because (1) a trustee in reorganization proceedings under Section 77 of the Bankruptcy Act, 11 U.S. C.A. § 205, becomes vested with the title to the property of the corporation, and hence, the corporation has no property nor business in the state subject to tax; (2) that the Louisiana statute, Act La. No. 10 of 1935, 1st Ex.Sess., does not purport to impose a tax upon him as trustee; and (3) that Section 124a, Title 28 U.S.C.A., in no manner affects the liability of the trustee nor enlarges it, for the reason that it does not relate to corporate franchise taxes, but that if it did it would be unconstitutional.

The facts are not in dispute. Before the Missouri Pacific Railroad Company was adjudged a debtor under the Railroad Corporation Reorganization Act, it was engaged in the railroad business in Louisiana and other states, and owned railroad property in Louisiana. It was adjudged a debtor on March 31, 1933. The trustee appointed has continued to operate the railroad, both in interstate and intrastate commerce, in Louisiana. There is no dispute as to the amount of the tax, and if valid it became due October 1, 1935. By orders entered from time to time, the trustee was directed to pay the cost of maintaining the corporate existence of the debtor, to take any necessary action to protect the corporate organization, to maintain its railroads and property wherever situate, to manage and conduct its business, to reimburse counsel for expenses incurred in connection with the maintenance of its corporate existence and organization, and the trustee was authorized to exercise the powers of an equity receiver.

The statute here involved, Acts La. No. 10, of 1935, 1st Ex.Sess., requires foreign corporations, if authorized to do or doing business in the state, or if using any part or all of their capital or plant in the state, to file a report containing certain information with the Secretary of State on or before October 1, 1935 and annually thereafter. Section 2(4) provides:

"For the purpose of ascertaining the tax hereby imposed, every foreign corporation subject to said tax is deemed to have employed in this State the proportion of its entire issued and outstanding capital stock, surplus and undivided profits, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:

"(a) The ratio that its property and assets in this State bears to all of its property and assets wherever situated.

"(b) The ratio that the volume of business done in this State bears to the total volume of business done by the corporation.

"Provided, that when such corporation has no property or assets in this State, the ratio of volume of business shall be used alone.

"Provided further, that the proportion of capital stock, surplus and undivided profits allocated for franchise taxation under this Act shall in no case be less than the total assessed value of real and personal property in this State of each such foreign corporation for the calendar year preceding that in which the tax is due."

The Supreme Court in United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159, held that the Federal corporation tax law which imposed an excise tax on the doing of business by corporations, was not applicable to a receiver of a corporation appointed in a state court, holding that the receiver was not liable for corporation taxes accruing subsequent to his appointment. It was said that the receiver operated the property as an officer of the court and not as an officer of the corporation.

In Michigan, by Haggerty v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, the court considered the applicability of a statute of Michigan, which imposed a tax upon corporations for the privilege of doing business within that state. A receiver had been appointed by a Federal court and the state authorities asked for an order directing him to pay the franchise taxes due. This being denied, the case was taken to the Supreme Court, where the decree appealed from was reversed. In the course of the opinion by Mr. Justice Cardozo it was, among other things, said (page 514):

"The tax is laid upon the corporation 'for the privilege of exercising its franchise and of transacting its business within this state.' Whether a corporation does exercise its franchise or transact its business within the meaning of a statute so framed when it does business through a receiver is a subject on which much subtle argument has been expended by state and federal courts. Distinctions have been drawn between receivers appointed to carry on the business of a corporation with a view to the continuance of its corporate life, and receivers appointed in aid of the dissolution

of the corporation or the liquidation of its business. \* \* \* Other distinctions have been drawn between taxes on a franchise to exist as a corporation and a franchise for transacting business, or, as many of the cases put it, between a franchise to 'be' and a franchise to 'do.' \* \* \* Even where the tax is on a franchise to 'do,' there is wide diversity of judgment. The wording of some statutes has been read by some courts as importing the doing of business in the usual course by agents and officers appointed in the usual way. \* \* Wording only slightly different has been thought by other courts to include the operations of a business conducted by receivers. \* \* \* Other wording not unlike has been held to import the imposition of a burden on the mere privilege to 'do,' though no business was in fact transacted by the directors or by any one. \* \* \*

"Viewing the receivership in its true light as one, not to wind up the corporation, but to foster the assets, we think the annual taxes accruing while the receiver was in charge must be deemed expenses of administration and therefore charges to be satisfied in preference to the claims of general creditors. They are so treated in the order by which the receiver was appointed. By the order the receiver is directed in continuing the business to pay taxes and rentals and any other expenses necessary to enable the business to go on, and to give such payments priority over other debts and obligations. These privilege fees were charges of the nature there described. Taxes owing to the government, whether due at the beginning of a receivership or subsequently accruing, are the price that business has to pay for protection and security. \* \* \* The privilege fees, being taxes, were expenses of administration within the very terms of the order, but in addition they were taxes of such an order that the corporation by failing to pay them became subject, if the state so elected, to a forfeiture of its franchise. \* \* \*

"\* \* \* To protect through a receiver the enjoyment of the corporate privilege and then to use the appointment as a barrier to the collection of the tax that should accompany enjoyment would be an injustice to the state and a reproach to equity."

In Bright v. State of Arkansas, 8 Cir., 249 F. 950, the property of a railroad corporation was being operated by equity receivers, and this court held the receivers liable to pay franchise taxes assessed under an Arkansas statute.

See, also, Kansas City v. Johnson, 8 Cir., 70 F.2d 360; Coy v. Title Guaranty & Trust Co., 9 Cir., 220 F. 90, L.R.A.1915E, 211.

The trustee points to a distinction between the case of an equity receiver and that of a trustee in bankruptcy, in that the latter becomes vested with the title of the bankrupt, and, it is argued, if he carries on the business which the debtor formerly carried on, he does so in his own right, and hence, the corporation exercises none of its corporate powers or franchises. Such a distinction has been recognized. In re Continental Candy Co., D.C.N.Y., 291 F. 773; In re Century Silk Mills, D.C.N.Y., 12 F.2d 292; In re International Match Corp., 2 Cir., 79 F.2d 203. We do not look upon these decisions as controlling.

The filing of the petition for reorganization merely expresses a desire to effect a plan of reorganization. In the instant case, it was made the duty of the trustee to protect the corporate entity, organization and franchises of the debtor. While the trustee had the legal title, he was holding it for a special purpose, and that was for the rehabilitation of the corporation. It must always be borne in mind that Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, has for its main purpose the rehabilitation of the debtor, and to that extent contemplates the continued corporate existence of the debtor. Forfeiture of franchises or accrual of penalties for nonpayment of the tax would be serious barriers to such rehabilitation, and by order of the appointing court the trustee was required to pay the cost of maintaining the corporate entity, organization and franchise of the debtor. It might well be argued that even though he were not liable for this franchise tax as such, he should, nevertheless, be required by the court to pay it as a proper expense incurred to maintain the corporate entity, organization and franchises of the debtor. Payment of these privilege fees was, in the circumstances here disclosed, we think, a proper expense of administration. The failure to pay them might result in a claim of forfeiture of the privilege of the corporation to continue to do business in Louisiana. But if the soundness of this conclusion were doubtful, we think that doubt was removed by the adoption of Section 124a, Title 28 U.S.C.A. That section reads as follows:

"Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation * * *."

■ The debtor, when it filed its petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, not only invoked all applicable provisions of the Act, but subjected itself to all obligations that the Act might impose.

■ Congress, of course, has no power to enact a state taxing measure. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L. Ed. ——, 114 A.L.R. 1487; Lowden v. State Corporation Commission, 42 N.M. 254, 76 P.2d 1139; Ashton v. Cameron County Water Imp. District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309.

The situation of the trustee with reference to the debtor's property and his duties relative thereto, were, prior to the enactment of the above quoted statute, somewhat unique. He held the legal title to the property, but in the event of reorganization, he returned the property to and revested title in the debtor. He was charged with the duty of preserving the corporate entity, organization, and franchises of the debtor, and he was required to pay the cost of maintaining such corporate existence. The proceeding primarily contemplated a temporary respite of normal corporation activities, and the trusteeship was, to some extent at least, in the interest of the debtor and its creditors.

As has been observed, before the passage of Section 124a, there had been holdings to the effect that a receiver conducting the business of a corporation was not liable for the franchise tax, and there have been holdings that such a receiver should be liable for such a tax. The courts had also held that the trustee in bankruptcy should not be held so liable because he was vested not only with title but possession of the property, and hence, the corporation was not doing any business. In Bright v. State of Arkansas, supra, we held that under an Arkansas statute, equity receivers should be liable for the payment of franchise taxes accruing during the receivership. We held, in Kansas City v. Johnson, supra, that Federal receivers authorized to carry on the business of a going-concern corporation, should be liable for the payment of taxes levied by the city ordinance or state laws upon the business conducted. In Michigan v. Michigan Trust Company, supra, the Supreme Court held a receiver appointed by a Federal court liable for state franchise tax.

There was more or less doubt and uncertainty as to whether, or under what conditions, receivers, liquidators, referees, trustees, or other officers appointed by Federal courts to conduct any business should be liable for local taxes applicable to the business conducted. In this state of affairs, Congress passed Section 124a, for the manifest purpose of putting at rest all doubt and uncertainty in this regard.

■ The trustee in this reorganization proceeding was not only authorized to conduct the debtor's business in Louisiana, but he was directed by order of the court to maintain its railroad and property wherever situate, and to manage and conduct its business. The tax imposed by the statute of Louisiana, Act La. No. 10 of 1935, 1st Ex. Sess., §.2(5), is "for the privilege of carrying on, doing business or the exercising of its charter within this State." Section 124a makes the trustee "subject to all State and local taxes applicable to such business the same as if such business were conducted by * * * [a] corporation." Congress has plenary legislative control over the administration of a bankrupt estate. In re Landquist, 7 Cir., 70 F.2d 929. If the terms of the Louisiana statute had specifically provided for the levy of a tax against the trustee or receiver, there could be no doubt that the trustee would be liable for the franchise tax. There were controversies between the state taxing authorities and the various liquidating agencies appointed by the Federal courts as to the liability for such taxes. Congress has, in the interest of justice or good will, by this Act directed the trustee to pay rather than litigate these tax claims. By the sweeping terms of this statute all doubts have been resolved in favor of the state taxes. Viewed as an administrative order affecting the conduct of the estate, no question of constitutional power is involved, but merely one of legislative policy and discretion, over which the courts exercise no power of judicial review. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578,

81 L.Ed. 703, 108 A.L.R. 1330. It is contended that the statute does not relate to taxes of this kind, but the statute is all-comprehensive in its terms. It includes "all State and local taxes applicable to such business the same as if such business were conducted by * * * [a] corporation." 28 U.S.C.A. § 124a. This tax was one that the corporation would have been required to pay had it not been in reorganization proceedings.

The decree appealed from is therefore affirmed.